**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

---

**In re: CCA Recordings 2255 Litigation**,
  **Petitioners,**

**v.**                                                    **Case No. 19-cv-2491-JAR**

                                                          **(This Document Relates to Case No. 15-**
                                                          **cr-20042-JAR-2,** *United States v. Ricardo*
                                                          ***Felix-Gamez***, **and Case No. 18-cv-2487-**
                                                          **JAR-JPO,** *Ricardo Felix-Gamez v. United*
                                                          ***States***)

**United States of America.**
            **Respondent.**

---

## MEMORANDUM AND ORDER

This matter is before the Court on Petitioner Ricardo Felix-Gamez's Motion to Vacate

and Discharge with Prejudice under 28 U.S.C. § 2255 (Doc. 170).[1]  Petitioner claims that the

government violated the Sixth Amendment by intentionally and unjustifiably becoming privy to

his attorney-client communications, and asks the Court to reject the government's request to

dismiss this action on procedural grounds and find that he has made a sufficient showing to

warrant an evidentiary hearing.  As a remedy, he asks the Court to vacate his judgment with

prejudice to refiling or, alternatively, to reduce his custodial sentence by approximately 50% and

vacate his term of supervised release.  The matter is fully briefed, and the Court is prepared to

rule.  For the reasons explained in detail below, the Court dismisses Petitioner's challenge to his

---

[1] Unless otherwise specified, citations prefaced with "Doc." refer to filings and docket entries in the underlying criminal case, No. 15-20042-JAR-2.  Citations prefaced with "*CCA Rec. Lit.* Doc." Refer to filings and entries in this consolidated Master case, No. 19-cv-2491-JAR-JPO.  With the exception of *United States v. Carter*, Case No. 16-20032-JAR, Doc. 758 (D. Kan. Aug. 13, 2019) ("*Black* Order"), citations to filings in Case No. 16-20032-JAR are prefaced with "*Black*, Doc."

conviction.  Petitioner's challenge to his sentence, including any term of supervised release, is denied without an evidentiary hearing.  Petitioner is also denied a certificate of appealability.

## I.    Background

### A.    Procedural History

Petitioner was charged in Count 1 of a Superseding Indictment with conspiracy to possess with intent to distribute and to distribute 50 grams or more of methamphetamine.[2]  Count 1 carried a statutory mandatory minimum term of ten years' imprisonment and maximum term of life.[3]

Petitioner was detained at Corrections Corporation of America ("CCA") from April 24, 2015 until October 19, 2016.[4]  He was represented by Thomas Bradshaw and Henri Watson in the underlying criminal proceedings.

On April 4, 2016, Petitioner entered into a written binding plea agreement pursuant to Fed. R. Crim. P. 11(c)(1)(C), and pleaded guilty to the conspiracy charge in Count 1.[5]  Pursuant to this agreement, the parties jointly recommended that the court sentence Petitioner to a total sentence of 135 months' imprisonment on Count 1.[6]  The government agreed not file additional charges arising out of the facts forming the basis for the present indictment.[7]  The plea agreement specifically reserved Petitioner's right to collaterally attack his conviction and sentence based on ineffective assistance of counsel and prosecutorial misconduct.[8]

---

[2] Doc. 41.

[3] *Id. See also* 21 U.S.C. § 841(a)(1), (b)(1)(A)(viii), and § 846.

[4] CCA was renamed CoreCivic and shuttered in December 2021.

[5] Doc. 79.

[6] *Id.* ¶ 3.

[7] *Id.* ¶ 5.

[8] *Id.* ¶ 11.

Based on at total offense level of 33 and a criminal history category of II, the Presentence Investigation Report ("PSIR") calculated Petitioner's applicable Guideline range at 151 to 188 months' imprisonment.[9]  The government did not file any objections to the PSIR or a sentencing memorandum prior to the sentencing hearing.  On September 12, 2016, Judge Carlos Murguia adopted the PSIR's sentencing calculations.[10]  Notwithstanding these calculations, the court accepted the parties' recommendation in the plea agreement and sentenced Petitioner to 135 months' imprisonment, followed by five years of supervised release.[11]  Petitioner did not file a direct appeal, nor has he filed a prior habeas motion under 28 U.S.C. § 2255.

The Court appointed the Federal Public Defender ("FPD") to represent Petitioner in his § 2255 proceedings on July 17, 2018.[12]  On September 11, 2018, the FPD filed this § 2255 motion on Petitioner's behalf, setting forth a single ground for relief: the government violated the Sixth Amendment by intentionally and unjustifiably intruding into his attorney-client communications.[13]  Petitioner's release date is September 8, 2025.

### B.    The *Black* Investigation and Order

The Court assumes the reader is familiar with its ruling in *United States v. Carter* ("*Black* Order") that precipitates the § 2255 motion before the Court.  That comprehensive opinion was intended to provide a record for future consideration of the many anticipated motions filed pursuant to § 2255 and is incorporated by reference herein.  The Court does not restate the

---

[9] Doc. 99 ¶ 98.

[10] Doc. 113.

[11] Doc. 112.  The underlying criminal proceedings were reassigned to the undersigned after Judge Murguia resigned from the bench.  Doc. 213.

[12] Standing Order 18-3.

[13] Petitioner supplemented his claim to add allegations regarding the attorney-client phone call at issue. *CCA Lit. Rec.*, Doc. 89.

underlying facts and conclusions of law in detail but will provide excerpts from the record as needed to frame its discussion of the issues presently before it.

Petitioner seeks relief based on events documented in the *Black* case and investigation, which included audio recordings of telephone conversations and soundless video recordings of meetings between attorneys and their clients who were detained at CCA.  On August 13, 2019, the Court issued the *Black* Order, which addressed, *inter alia*, the governing standard for an intentional-intrusion Sixth Amendment claim in the Tenth Circuit.[14]  The Order discussed the elements required to prove a per se violation of the Sixth Amendment under the Tenth Circuit's decision in *Shillinger v. Haworth*,[15] which held that a per se Sixth Amendment violation occurs when: (1) there is a protected attorney-client communication; (2) the government purposefully intruded into the attorney-client relationship; (3) the government becomes "privy to" the attorney-client communication because of its intrusion; and (4) the intrusion was not justified by any legitimate law enforcement interest.[16]  Once those elements are established, prejudice is presumed.[17]

The Court further held that a finding of purposeful intrusion into the attorney-client relationship necessarily requires a threshold showing that the recordings were protected attorney-client communications.[18]  While recognizing that the attorney-client privilege is not a right guaranteed by the Sixth Amendment, the Court applied principles relating to the privilege as a framework for this showing that the recordings between petitioners and counsel were protected

---

[14] *Black* Order at 145–62.

[15] 70 F.3d 1132 (10th Cir. 1995).

[16] *Black* Order at 162 (citing *Shillinger*, 70 F.3d at 1142).

[17] *Id.*

[18] *Id.* at 163.

communications under the Sixth Amendment.  With respect to the audio recordings, the Court determined that the following threshold showings must be made after review and verification by the FPD: (1) the telephone recording exists, and (2) a given call contains protected attorney-client communication, i.e., communication that relates to legal advice or strategy sought by the client.[19]  This threshold showing requires an affidavit from defense counsel confirming that the nature and purpose of the call(s) were within the ambit of protected communication, including but not limited to defense preparation, plea negotiations, or review of discovery.[20]

With respect to the video recordings, the Court determined that the following threshold showings must be made after review and verification by the FPD: (1) the video of the attorney-client meeting exists; and (2) the quality of the non-verbal communication in the video is sufficient to confirm communication between the detainee and counsel.[21]  This threshold showing also requires an affidavit from defense counsel confirming that the nature and purpose of the meeting(s) were within the ambit of protected communication.[22]

## C.      Proceedings in Consolidated Master Case

The *Black* Order reassigned all *Black*-related § 2255 motions pending before other judges in the District to the undersigned for determination of the merits of petitioners' Sixth Amendment claims and for consolidated discovery.[23]  It was this Court's intent that by reassigning the habeas actions to the undersigned and consolidating the cases for discovery, the process for seeing over 100 cases to completion would be streamlined for all parties.  Like the

---

[19] *Id.* at 166.

[20] *Id.*

[21] *Id.*

[22] *Id.*

[23] *CCA Rec. Lit.*, Doc. 1.

*Black* Order, the Court assumes the reader is familiar with the proceedings in the consolidated

master case that precipitates the matter before the Court, and does not restate the underlying facts

in detail but will provide excerpts from the record as needed to frame its discussion of the issues

presently before it.

Relevant here, on January 18, 2021, the Court issued an order: (1) reaffirming and

expanding its holding regarding the applicable Sixth Amendment standard; (2) addressing the

collateral-waiver-by-plea issue; and (3) addressing jurisdictional defenses raised by the

government, including certification requirements under Rule 2(b) of the Rules Governing

Section 2255 Proceedings.[24]  Specifically, the Court ruled that three petitioners in this

consolidated litigation who proceeded to trial in their underlying criminal proceedings are

entitled to evidentiary hearings on their audio recording Sixth Amendment claims.  Second, the

Court determined that the rule in *Tollett v. Henderson* procedurally barred petitioners who

alleged pre-plea Sixth Amendment violations from advancing those claims.[25]  Third, the Court

determined that approximately twenty petitioners lacked standing to advance their Sixth

Amendment claims for various reasons, including: claims that alleged post-sentencing violations;

claims where petitioners who had been deported challenged only their sentence; claims where

petitioners challenging their sentence had been sentenced to the mandatory-minimum sentence;

and claims involving binding pleas that were accepted by the court at the change-of-plea

hearing.[26]

---

[24] *CCA Rec. Lit.*, Doc. 730 (clarified and reconsidered in part on other grounds, *id.*, Doc. 784).

[25] *Id.*  (citing 411 U.S. 258 (1973)).

[26] *CCA Rec. Lit.*, Docs. 730, 784.

On December 10, 2021, the Court issued an order that concluded petitioners in the temporal category of claims who alleged Sixth Amendment violations that occurred post-plea or conviction but before sentencing could not rely on *Shillinger*'s per se rule.[27]

**D.    Recordings in this Case**

Upon arriving at CCA, Petitioner signed several documents acknowledging that telephone calls that he made from CCA may be monitored and recorded and advising him that calls with his attorney were subject to being monitored unless he followed the privatization procedure in place to make an unmonitored call.  While Petitioner was detained at CCA, he called his attorney to discuss his case.

In the *Black* case, the government surrendered to the Court recordings and derivative evidence of audio calls from CCA that were in its possession, including the recording of the call in Petitioner's case.  Copies of the recordings were provided to the FPD on January 9, 2019.  The FPD reviewed one audio recording of Petitioner speaking with Watson from CCA on June 22, 2015.[28]

On August 13, 2019, this Court released the video recordings to the FPD as a result of the *Black* investigation.[29]  The FPD reviewed five video recordings of Petitioner meeting with Bradshaw at CCA between March 1 and April 21, 2016.[30]

Pursuant to the Court's Order, Petitioner provided a privilege log detailing the claimed protected communications, and verifying that during these calls and meetings, Petitioner

---

[27] *Id.*, Doc. 1034.

[28] *Id.*, Doc. 773-1.

[29] *Black* Order at 165.  The FPD took possession of the DVR hard drives on August 16, 2019. *Black*, Doc. 761.

[30] *CCA Rec. Lit.*, Doc. 773-1.

discussed matters "relat[ing] to legal advice or strategy" with Bradshaw and Watson.[31]
Petitioner also provided sworn declarations from Bradshaw and Watson, stating that any
conversation with an incarcerated client was "related to legal advice or strategy sought by
Petitioner."  Counsel also attested that they did not believe such recordings would be dispensed
to prosecutors, nor did they consent to such distribution or availability because they believed
attorney-client calls were treated as confidential.[32]  Petitioner supplemented the record with a
sworn statement addressing the issue of waiver with respect to his audio-recording claim.[33]

Petitioner was prosecuted by AUSAs Scott Rask, James Ward and SAUSA Erin
Tomasic.[34]  AUSAs Rask and Ward submitted affidavits stating that they were not aware of the
audio or video recordings nor did they listen to or review any of the recordings.[35]  Rask also
confirmed that audio recordings of phone calls Petitioner made from CCA were obtained as part
of the prosecution of this case.[36]

After the government objected to Petitioner's privilege log, the Court reviewed the
recordings *in camera*.  At the beginning of the call, a recorded preamble states the balance of
Petitioner's pre-paid call account and the following language: "This is a collect call from an
inmate at CCA-Leavenworth Detention Center.  This call is subject to recording and
monitoring."  As set out in the privilege log, the call include discussions relating to legal advice

---

[31] *Id.*

[32] *Felix-Gamez v United States*, 18-2487-JAR, Docs. 4-1, 8-1.

[33] *Id.*, Doc. 7-1.

[34] Tomasic was terminated in May 2017, after she admitted to listening to calls between a defendant and counsel in a separate criminal proceeding.  *Black* Order at 98.

[35] *Felix-Gamez v. United States*, No. 18-2487-JAR, Docs. 3-1, 3-2.

[36] *Id.*, Doc. 3-1.

or strategy, including the performance of Petitioner's current attorney and whether Watson should represent him.

The Court also confirms that the video recordings show Petitioner meeting with Bradshaw.  As set out in the privilege log, the Court confirms that the first and second video recordings show Petitioner meeting with Bradshaw on March 1 and 3, 2016, for approximately 50 minutes, where they reviewed documents.  The third meeting, dated March 17, 2016, shows Petitioner meeting with Bradshaw and for approximately 40 minutes, where they review potential plea agreement paperwork.  The fourth meeting on March 30, 2016, lasted approximately 90 minutes, where Petitioner and Bradshaw look at trial documents.  In the final meeting on April 21, 2016, Petitioner and Bradshaw review a sentencing memorandum for approximately one hour.  An interpreter was present for all five meetings.  In light of the analysis below, however, further details of the meeting visible in the videos are not pertinent and will not be discussed in this order.

## II.    Discussion

Petitioner's claim is in the temporal category of motions alleging both pre- and post-plea/pre-sentencing Sixth Amendment violations.  Petitioner falls in a sub-category of these claims involving a Rule 11(c)(1)(C) binding plea agreement for a specific term.  Two recent decisions by the Tenth Circuit Court of Appeals control this Court's analysis of Petitioner's claim.  The Court first discusses his pre-plea violation, then turns to his post-plea/pre-sentence violation.

### A.    *Tollett*

Petitioner is one of many petitioners in this consolidated matter who allege pre-plea Sixth Amendment violation claims, including Matthew Spaeth, whose pre-plea claim was dismissed by

this Court as foreclosed by the rule in *Tollett*.[37]  In that case, the United States Supreme Court rejected a pre-plea constitutional challenge where the defendant failed to show that the violation rendered his guilty plea involuntary and unknowing.[38]  Many of these petitioners, including Mr. Felix-Gamez, declined the opportunity afforded by the Court to amend their § 2255 motions to seek relief under *Tollett* or to allege a post-plea violation, and acknowledged that by doing so, they rendered their pre-plea Sixth Amendment claims vulnerable to dismissal.[39]  The Court deferred ruling on Petitioner's § 2255 motion pending the outcome of Mr. Spaeth's appeal.[40]

On June 12, 2023, the Tenth Circuit Court of Appeals affirmed this Court's ruling in *Spaeth*.[41]  The Tenth Circuit ruled: (1) the carve-out provision in Spaeth's unconditional standard plea agreement did not constitute a waiver of the government's right to raise, or create an exception to, the rule of law in *Tollett*, and because Spaeth had not met his burden under *Tollett* to vacate his unconditional guilty plea, this Court did not err in ruling that *Tollett* bars his Sixth Amendment challenge;[42] (2) Spaeth's reliance on the per se Sixth Amendment violation rule in *Shillinger* is misplaced because that case did not concern *Tollett*'s guilty-plea situation and "has nothing to do with whether a guilty plea is voluntary or knowing";[43] and (3) *Tollett* precludes

---

[37] 411 U.S. 258, 266 (1973).

[38] *Id.*

[39] *CCA Rec. Lit.*, Doc. 840; *see Hill v. Lockhart*, 474 U.S. 52, 58–60 (1985) (adopting two-part test for ineffective assistance of counsel claim in the plea context: "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.").

[40] *See Spaeth v. United States*, No. 19-2413-JAR-JPO, Docs. 3, 7, 8; *CCA Rec. Lit.*, Docs. 730, 785, 922.

[41] *United States v. Spaeth*, 69 F.4th 1190 (10th Cir. 2023).  The mandate issued August 21, 2023.

[42] *Id.* at 1204–08.

[43] *Id.* at 1211.  The court declined to decide "what effect any per se presumption of a Sixth Amendment violation might have in applying the *Hill* prejudice standard—a reasonable probability that the defendant would not have pleaded guilty absent the deficient performance."  *Id.*

Spaeth from challenging his sentence based on an alleged pre-plea Sixth Amendment violation.[44]

The court concluded:

> We abide by several principles that the Supreme Court made transparent 50 years ago.  When a defendant voluntarily and knowingly pleads guilty, the defendant acknowledges that unconstitutional conduct preceding the guilty plea is irrelevant to the admission of factual guilt.  As a result, we do not assess the merits of pre-plea constitutional claims but instead ask whether ineffective assistance of counsel caused defendants to enter their guilty pleas involuntarily and unknowingly.  *Tollett* and its progeny tell us how to answer that question: challengers must show ineffective assistance of plea counsel.  Because Spaeth does not even contend that his counsel performed deficiently, or that such deficient performance prejudiced him by depriving him of a trial right he would have chosen, we conclude that Spaeth's § 2255 motion must be dismissed.[45]

The Tenth Circuit's ruling in *Spaeth* compels dismissal of Petitioner's § 2255 motion based on the June 22, 2015 phone call.  This recording was made and accessed by the government before Petitioner entered his guilty plea on April 4, 2016.[46]  Petitioner challenges both his conviction and his sentence based on this alleged pre-plea Sixth Amendment violation by the government.  Like Mr. Spaeth, Petitioner relies on the per se prejudice rule in *Shillinger* and does not attempt to meet the applicable *Tollett* standard for showing that ineffective assistance of counsel caused him to enter his plea involuntarily and unknowingly.  He is also precluded from challenging his sentence or term of supervised release based on any alleged pre-plea violation.[47]

---

[44] *Id.* at 1212–13.

[45] *Id.* at 1213.

[46] *See CCA Rec. Lit.*, Doc. 809-1 at 4.

[47] The Court does not reach the government's alternative grounds for dismissal that Petitioner's claim is untimely under 28 U.S.C. § 2255(f)(4).

B.      *Orduno-Ramirez*

The recorded meetings between Petitioner and Bradshaw took place between March 1 and April 21, 2016.  The March 2016 meetings occurred before Petitioner entered a guilty plea on April 4, 2016, and before he was sentenced on September 12, 2016.  The Court has clarified that the government did not have possession of and access to the video recordings until May 17, 2016, and it gave up possession when it disgorged the videos to the Court on August 9, 2016.[48] Thus, any alleged Sixth Amendment violation stemming from the video recordings could not have occurred until after Petitioner's plea but before he was sentenced.

The Court's December 10, 2021 Order concluded petitioners in the temporal category of claims who alleged Sixth Amendment violations that occurred post-plea or conviction but before sentencing could not rely on *Shillinger*'s per se rule.[49]  Instead, Petitioners in this temporal category must demonstrate prejudice, that is, "a realistic possibility of injury to [the defendant] or benefit to the [government]."[50]

The Tenth Circuit Court of Appeals affirmed this Court's decision in another § 2255 proceeding raising a similar Sixth Amendment violation claim involving video recordings.  In *United States v. Orduno-Ramirez*, the Tenth Circuit declined to categorically extend a conclusive presumption of prejudice to post-plea or -conviction intrusions into attorney-client communications.[51]  After noting this Court held that the petitioner must show prejudice in such cases, the Tenth Circuit did "not decide which party bears the burden because the Government has shown that Mr. Orduno-Ramirez has not been prejudiced, and he does not contend

---

[48] *See CCA Rec. Lit.*, Doc. 784 at 13.

[49] *Id.*, Doc. 1034.

[50] *Id.*; *see Shillinger v. Haworth*, 70 F.3d 1132, 1142 (10th Cir. 1995) (quoting *Weatherford v. Bursey*, 429 U.S. 545, 558 (1977)).

[51] 61 F.4th 1263, 1273–77 (10th Cir. 2023) (discussing *Shillinger*, 70 F.3d at 1142).

otherwise."[52]  Nevertheless, the court found that the government showed that the intrusion did not cause Mr. Orduno-Ramirez prejudice, and Orduno-Ramirez did not contend that he was prejudiced, relying instead on the presumption of prejudice in *Shillinger*.[53]  The court further found that the government showed that the lead prosecutor did not view the videos, the soundless video recordings provided no strategic value to the prosecution, and the record reveals no irregularity in the petitioner's sentencing proceedings.[54]

The Tenth Circuit also denied Orduno-Ramirez's request to order supplemental briefing on the burden of proof question.[55]  In a separate related case on appeal, however, the court recently agreed to address the issue of "[w]hether the district court erroneously required [Petitioner] to demonstrate prejudice to establish his Sixth Amendment claim."[56]

Although the question of whether the petitioner must show prejudice or whether the government must show lack of prejudice is an open question, the Court easily finds that Petitioner has not been prejudiced in this case.  While the December 10, 2021 Order held that Petitioner bore the burden to show prejudice resulting from the intentional intrusion into his attorney-client communications, the government introduced evidence and arguments showing that he suffered no prejudice.  As was the case in *Orduno-Ramirez*, the government submitted affidavits from the lead prosecutors stating that at no time during their involvement in the case did they view any video recordings of Petitioner meeting with counsel at CCA.

---

[52] *Id.* at 1276.

[53] *Id.* at 1277.

[54] *Id.*

[55] *Id.* at 1277 n.24.

[56] *United States v. Valdez*, No. 22-3025 (10th Cir. Sept. 12, 2023).

More critically, Petitioner entered into a binding Rule 11(c)(1)(C) plea agreement and was sentenced consistent with that agreement. The government's discretion or capacity to prejudice Petitioner was curtailed by the specific terms of the plea agreement. The government did not raise any objections to the PSIR or file any other motions regarding Petitioner's sentencing, and the 135-month sentence was well-below the Guideline range of 151 to 188 months' imprisonment. Thus, the only governmental conduct that had any effect on sentencing was its offer of a binding plea agreement that allowed Petitioner to avoid a potential 15-year sentence.

The Court agrees that none of the information the Court, the United States Probation Office, or the government relied on for sentencing could have come from the March through April 2016 video recordings. Even assuming the government bears the burden of proving lack of prejudice, it has met that burden because the record reveals no irregularity in or threat to the reliability or fairness of Petitioner's sentencing proceedings, where he received the sentence he bargained for in his Rule 11(c)(1)(C) plea agreement. Because the government has shown the intrusion did not cause prejudice—and Petitioner does not contend that he was actually prejudiced—there is no Sixth Amendment violation and no ground for relief under § 2255.[57]

## III.   Certificate of Appealability

Rule 11 of the Rules Governing Section 2255 Proceedings states that the Court must issue or deny a certificate of appealability ["COA"] when it enters a final order adverse to the applicant. "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."[58]  If the district court denies a habeas

---

[57] *United States v. Orduno-Ramirez*, 61 F.4th 1263, 1266 (10th Cir. 2023).

[58] 28 U.S.C. § 2253(c)(2).

petition on procedural grounds without reaching the merits of petitioner's underlying constitutional claim, "the prisoner must show both (1) 'that jurists of reason would find it debatable whether the district court was correct in its procedural ruling' and (2) 'that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right.'"[59]  For the reasons explained above, Petitioner has not made a substantial showing on either prong and the Court therefore denies a COA.

        **IT IS THEREFORE ORDERED BY THE COURT** that Petitioner Ricardo Felix-Gamez's Motion to Vacate and Discharge with Prejudice under 28 U.S.C. 2255 (Doc. 170) is **dismissed in part and denied in part** without an evidentiary hearing.  Petitioner is also denied a certificate of appealability.

        **IT IS SO ORDERED.**

        Dated: <u>October 11, 2023</u>

                                         S/ Julie A. Robinson
                                        JULIE A. ROBINSON
                                        UNITED STATES DISTRICT JUDGE

---

[59] *United States v. Park*, 727 F. App'x 526, 528 (10th Cir. 2018) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).